MARTIN COUNTY COAL CO./Pilgrim Mining Co., Appellant

v.

William GOBLE; Hon. Douglas Wayne Gott, Administrative Law Judge; and Workers' Compensation Board, Appellees

2013–SC–000230–WC

Supreme Court of Kentucky.

Rendered: December 18, 2014

Counsel for Appellant: Thomas Clarke Donkin, Lexington.

Counsel for Appellee: John Earl Hunt

## OPINION OF THE COURT BY
## JUSTICE KELLER

The Administrative Law Judge (the ALJ) awarded William Goble (Goble) permanent partial disability income and medical expense benefits based on a finding that Goble suffered low back and psychological injuries and related permanent impairment ratings.[1] The Workers' Compensation Board (the Board) and the Court of Appeals affirmed. Martin County Coal Co. (Martin County) does not contest the ALJ's award of benefits to Goble related to his low-back injury; however, it contends that the ALJ abused his discretion when he found that Goble has a permanent psychological impairment rating. Goble argues to the contrary. For the following reasons, we affirm.

## I. BACKGROUND.

The parties do not dispute the underlying facts. Goble suffered a work-related back injury on August 3, 2009. Since that injury, Goble has undergone conservative medical care, consisting primarily of medication and self-directed exercise. Despite that treatment, Goble consistently complained of ongoing low back pain with radiation into his right lower extremity. In addition to his physical complaints, Goble complained of depression and anxiety related to his back injury. Goble has not received any treatment for his psychological complaints.

Goble timely filed a claim asserting that he suffered a low-back injury on August 3, 2009. He subsequently amended his

---

1. The ALJ also awarded medical expense benefits based on Goble's hearing loss, which was not sufficient to warrant an award of income benefits.

claim, asserting that he also suffered a psychological injury. The parties fully litigated Goble's claims, filing numerous medical reports and records regarding his physical injury and two evaluations regarding his psychological injury. After reviewing the evidence, the ALJ concluded that Goble has a 12% permanent impairment rating—7% related to his low back injury and 5% related to his psychological injury—and awarded benefits accordingly. Martin County does not dispute the ALJ's award of benefits related to Goble's physical injury; therefore, we only summarize the evidence related to Goble's psychological injury in detail below.

Goble filed the November 9, 2010, report from Eric Johnson, Ph.D. Dr. Johnson noted that Goble complained of constant depression, irritability, a lack of energy and motivation, difficulty concentrating and remembering, and a general lack of interest in all activities. Goble attributed these complaints to his decreased ability to engage in normal daily activities because of his pain.

Dr. Johnson's testing revealed a high average IQ, intact remote memory, good ability to concentrate, intact abstract and common sense reasoning, and evidence of depression and somatization. Dr. Johnson made a diagnosis of pain disorder associated with psychological factors and back pain, and he assigned Goble a 67 on the Global Assessment of Functioning scale. As to Goble's prognosis, Dr. Johnson stated that Goble's recovery depended on the success of future medical treatment reducing his pain and improving his functional abilities. As to an impairment rating, Dr. Johnson stated that:

> Since [Goble] has not had psychiatric consultation and intervention, this examiner cannot estimate permanent impairment at this time. His symptoms are relatively mild, and his current level of

impairment due to the pain and resulting depressed mood from the work-related injury is estimated to be in the low mild range at five (5) percent. With successful concurrent medical and psychiatric treatment, this level of impairment should decline.

Martin County filed the March 7, 2011, report from Douglas Ruth, M.D. Goble complained to Dr. Ruth of decreased motivation, feeling "down," having "low energy," and "feeling anxious." Dr. Ruth's examination revealed mild depression and he made a diagnosis of depressive disorder not otherwise specified. Dr. Ruth stated that Goble's depressive disorder could be related to the work-injury or to obstructive sleep apnea and hypothyroidism. Therefore, Dr. Ruth recommended additional testing to rule out the latter two conditions as potential causes for Goble's depression. According to Dr. Ruth, if Goble's depressive disorder arose from his sleep pathology or hypothyroidism, prognosis for a full recovery was "quite good." However, Dr. Ruth only anticipated modest improvement in Goble's condition if it arose from his pain. Because Dr. Ruth could not determine the cause of Goble's condition and because Goble had not received any psychiatric treatment, Dr. Ruth stated that Goble had not reached maximum medical improvement. Therefore, Dr. Ruth stated that he could not assign Goble an impairment rating.

In his deposition and at the formal hearing, Goble testified that he suffered from pain in his low back with radiation into his right leg. He described these symptoms as generally being of moderate severity. However, he stated that any activity aggravated his symptoms, particularly the pain radiating into his leg. Goble testified his symptoms had not significantly decreased, making it difficult for him to perform much, if any, work around the house.

Finally, Goble testified that his thyroid levels had been checked within the last year, and his physician had not changed his medication.

As noted above, the ALJ awarded Goble permanent partial disability income benefits based on a 12% impairment rating—7% related to Goble's back and 5% related to Goble's psychological condition. As to Goble's psychological condition, the ALJ stated as follows:

> The ALJ deliberated at length over Goble's claim of a companion psychological injury. Goble did not offer strong testimony in support of it. Perhaps that was because the condition is mild, as noted by his evaluator, Dr. Johnson, whose opinion on impairment was less than enthusiastically assigned. However, the report of the Defendant's psychiatric evaluator, Dr. Ruth, was too flimsy in this instance to support any of the relief argued for by the Defendant. The ALJ did not find that report to support the finding urged by the Defendant that Goble's psychological condition is related to ongoing thyroid or sleep disorders.... The ALJ rejects the Defendant's argument that Dr. Johnson's rating was not stated with sufficient firmness to establish permanent impairment, and relies on that evidence to find that Goble has additional impairment of 5% for his work related depression.

Martin County filed a petition for reconsideration arguing the ALJ's finding of a 5% permanent psychological impairment rating was not supported by the evidence. The ALJ denied that petition stating that Martin County was simply re-arguing the merits of the claim.

Martin County then appealed to the Board, which affirmed the ALJ. In doing so, the Board stated that:

> The question on appeal is whether the ALJ's decision regarding an award based upon psychological impairment was supported by substantial evidence.
>
> . . .
>
> Martin County's assertion [that] Goble did not meet his burden of proof is simply not true. Obviously the ALJ was persuaded Goble sustained a psychological component to his injury, and was entitled to an award of benefits. Determinations related to MMI and impairment ratings are solely within the purview of the ALJ. On those issues, this Board is not permitted to substitute its judgment for that of the ALJ. Substantial evidence exists to support the ALJ's determination Goble sustained a psychological component to his claim for which he is entitled to benefits. It is clear from the evidence Goble was not afforded any psychological treatment, without which both experts conclude his condition will not improve. Martin County apparently believes care can be withheld without ramification. Both experts concluded Goble's condition may improve with care. A reasonable inference is that without care he will get no better. Likewise, without such care, the ALJ could reasonably infer based upon Dr. Johnson's report, Goble qualified for an award based upon a 5% impairment rating. We believe this determination is appropriate, and supported by substantial evidence.

Dissatisfied with that result, Martin County appealed to the Court of Appeals, which affirmed the Board. Martin County now appeals to this Court, continuing to argue that the ALJ could not rely on Dr. Johnson's impairment rating because there was no proof that Goble's psychological condition had reached maximum medical improvement. For the following reasons, we affirm.

## II. STANDARD OF REVIEW.

■■■ The claimant in a workers' compensation claim bears the burden of proving every element of his claim before the ALJ. *Gibbs v. Premier Scale Co./Indiana Scale Co.*, 50 S.W.3d 754, 763 (Ky.2001), *as modified on denial of reh'g* (Aug. 23, 2001). When determining if the claimant has met his burden of proof, "the ALJ [has] the sole discretion to determine the quality, character, and substance of [the] evidence ... [and] may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky.2012). If a claimant successfully met his burden of proof before the ALJ, "the question on appeal is whether substantial evidence in the record supported the [ALJ's] decision." *Transp. Cabinet v. Poe*, 69 S.W.3d 60, 62 (Ky.2001), *as modified on denial of reh'g* (Mar. 21, 2002). "Substantial evidence is evidence of relevant consequence having the fitness to induce conviction in the minds of reasonable people." *Id.*

## III. ANALYSIS.

The sole issue on appeal is whether there was substantial evidence to support the ALJ's finding that Goble has a permanent psychological impairment rating. Martin County argues that there was no such evidence for three interrelated reasons: (1) Dr. Ruth stated Goble's depression could have been related to his hypothyroidism and sleep pathology; (2) Dr. Ruth recommended additional testing to determine if Goble's depression is related to those conditions and Goble did not undergo that testing; and (3) Dr. Johnson

stated he could not assess a permanent impairment rating because Goble's condition could improve with treatment, which Goble did not receive. We address each argument below.

■■ As to the first argument, the ALJ did not find Dr. Ruth's opinion regarding causation to be persuasive, which the ALJ was free to do. Martin County argues Dr. Ruth's opinions were "unconverted;" however, that is somewhat of an overstatement. Goble admitted he had undergone a partial thyroidectomy and had been taking thyroid medication for a number of years. However, he also testified that, within the year preceding the hearing, he had undergone testing to determine if the medication was working,[2] and his physician had not changed his medication. Furthermore, Goble admitted that he had suffered from and been treated for sleep problems in the past. However, those problems arose when he was working away from home in 2004–2005; he stopped treatment because it was not effective; and he had no complaints of problems with sleeping between 2005 and the date of his injury. Thus, there was evidence of substance controverting the basis for Dr. Ruth's alternative causation opinion, and we cannot say that the ALJ abused his discretion when he determined that Dr. Ruth's analysis was "flimsy."

■■ As to the second argument, Goble testified that he had recently undergone testing regarding his thyroid condition. Furthermore, he was under no obligation to undergo a sleep study simply because Dr. Ruth indicated such a study might be helpful. If Martin County believed that Goble was not getting proper medical treatment and his recovery was thereby

---

2. Martin County takes Goble to task for not filing medical records to support his testimony and for not providing those medical records to Dr. Ruth for his review. However, Goble had no obligation to do so.

affected or delayed, it could have moved for an order permitting it to choose a treating physician for Goble. *See* KRS 342.020(7). Martin County could also have sought a reduction in benefits payable to Goble if it believed that Goble was unreasonably refusing to submit to treatment for his psychological condition. *See* KRS 342.035(3). However, Martin County did not choose to follow either of these paths, and it cannot now complain that Goble did not receive treatment or testing suggested by Dr. Ruth.

█ As to the third argument, a permanent impairment rating is "the percentage of whole body impairment caused by the injury or occupational disease as determined by the 'Guides to the Evaluation of Permanent Impairment'" (the *Guides*).[3] KRS 342.0011(35). As noted by Martin County, the *Guides* defines "permanent impairment" as "[a]n impairment that has reached maximal medical improvement." *Id.* at 602. The *Guides* defines "maximal medical improvement" as "[a] condition or state that is well stabilized and unlikely to change substantially in the next year, with or without medical treatment. Over time, there may be some change; however, further recovery or deterioration is not anticipated." *Id.* at 601.

It is true that Dr. Johnson stated he could not estimate what Goble's permanent impairment was at the time of his evaluation and that any impairment should improve with physical and psychological treatment. However, he also stated that any improvement in Goble's psychological condition was dependent, in part, on a reduction of pain and an increase in functional activities. Goble testified his pain had not improved significantly; his functional abilities had not increased significantly; and he had not gotten any psycho-logical/psychiatric treatment. Therefore, the ALJ could reasonably infer that Goble's psychological condition had stabilized and that Goble had reached maximum medical improvement.

Furthermore, the *Guides* states "[a] patient may decline surgical, pharmacologic, or therapeutic treatment of an impairment. If a patient declines therapy for a permanent impairment, that decision neither decreases nor increases the estimated percentage of the individual's impairment." The *Guides* at 20. Thus, contrary to Martin County's argument, Goble's failure to seek psychological/psychiatric treatment did not bar Dr. Johnson from assigning a permanent impairment rating. As noted above, the ALJ was free to infer that Goble had reached maximum medical improvement, and he was also free to infer that Dr. Johnson's estimated impairment rating was permanent. Thus, the ALJ's adoption of Dr. Johnson's estimated impairment rating was supported by evidence of substance, and we cannot disturb it on appeal.

## IV. CONCLUSION.

Having reviewed the record and the arguments of the parties, we affirm.

All sitting. All concur.

**3.** *AMA Guides to the Evaluation of Permanent Impairment,* (Linda Cocchiarella, M.D. & Gunnar B.J. Andersson, M.D., Ph.D. eds., Fifth Edition 2001).